UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY WALLACE,

        Petitioner,        Case Number: 14-14535
                                     HON. AVERN COHN

v.

STEVE RIVARD,

        Respondent.
_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS
## AND DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Petitioner Tony Wallace (Petitioner) is a state inmate at the Chippewa Correctional Facility in Kincheloe, Michigan. Petitioner filed a pro se petition for a writ of habeas corpus challenging the sentences imposed for his convictions for second-degree murder, M.C.L. § 750.317, assault with intent to do great bodily harm less than murder, M.C.L. § 750.84, felonious assault, M.C.L. § 750.82, and felony firearm, M.C.L. § 750.227b. Respondent, through the Attorney General's office, filed a response, arguing that one of Petitioner's claims is partially procedurally defaulted, and that all of his claims are without merit. For the reasons which follow, the petition will be denied.

## II. Background

### A. Facts

The Michigan Court of Appeals summarized the evidence presented at trial:

The case arose out of a shooting on June 17, 2011. While walking down the street, Linsay Pitman was approached by a vehicle driven by Angela Carson. Pitman got into the car, and Carson drove to an apartment building owned by Roosevelt Ward and parked across the street from the apartment. Ward approached the car on the driver's side and engaged the women in conversation. Soon after, a man, identified as defendant Tony Wallace, ran toward the car and began shooting a handgun. Ward was severely/seriously injured, and Carson was killed. Ward was unable to identify the gunman, and immediately after the event, Pitman told police that she also was unable to identify him. However, Pitman subsequently testified that she did recognize the gunman as defendant, from whom she regularly purchased drugs. She spoke with defendant after the shooting on a couple of occasions. One of the times he said, "Snitches end up in ditches." The next time he asked her, "how does a lamb lye [sic]" and then stated, "They're only lying when they're dead."

On July 28, 2011, Pitman went to the police and informed Officer Karen Miller that defendant was the shooter. Police then prepared three photo arrays for Pitman. The first two arrays did not have defendant's picture, but the third one did. Pitman picked defendant out of the third array. Defendant filed a pretrial motion challenging the admissibility of the photo lineup identification, and the trial court held an evidentiary hearing. Officer Miller, who conducted the third photo array,[] testified at the hearing, and acknowledged that she had to shake Pitman in an effort to wake her up during the interview. Pitman, who was in custody on unrelated charges, did not appear at the hearing despite defense counsel's request that Pitman be produced, so that counsel could cross-examine her and establish that at the time she made her identification of defendant, she was high on drugs. However, after hearing Officer Miller's testimony and viewing the photo array the trial court eventually denied the request to produce Pitman, stating that the photo array [was] extremely fair. The trial court found that the lineup was not impermissibly suggestive, that plaintiff did not have to establish an independent basis for the identification at trial, and that the question regarding the credibility of Pitman's identification of defendant was for the trier of fact.

At trial, Pitman identified defendant in court as the shooter. Pitman testified that, while she was high at the time of the shooting, she had seen defendant over 100 times before at a particular dope house and had

> known him for approximately six months. She admitted using crack cocaine and heroin and that she had bought drugs from defendant. Pitman also testified that she did not identify defendant as the shooter on the night of the incident because he was her drug source and she did not want him to go to jail.

People v. Wallace, No. 310442, 2013 WL 4525881, *1-2 (Mich. Ct. App. Aug. 27, 2013).

### B. Procedural History

Petitioner was convicted by a jury in Wayne County Circuit Court of second-degree murder, assault with intent to do great bodily harm less than murder, assault with a dangerous weapon, and possession of a firearm during the commission of a felony. He was later sentenced to 31 years, 3 months to 50 years for second-degree murder, 6 years, 8 months to 10 years for assault with intent to do great bodily harm less than murder, and 2 to 4 years for assault with a dangerous weapon, all to be served concurrently with one another and consecutively to 2 years for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims: (i) right of confrontation violated at pretrial evidentiary hearing; and (ii) denied right to present a defense. The Michigan Court of Appeals affirmed Petitioner's convictions. Wallace, 2013 WL 4525881. Petitioner filed an application for leave to appeal to the Michigan Supreme Court, rasing the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Wallace, 843 N.W.2d 191 (Mich. 2014).

Petitioner then filed the pending habeas petition. He raises these claims:

I. Trial court violated due process of law with abuse of discretion at

>   evidentiary hearing.
>
> II. Trial court abused discretion on ruling with "complete defense;" counsel admitted ineffectiveness

### III. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam), quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003), quoting Williams, 529 U.S. at 413. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's

application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011), quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 102-03 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. See Williams, 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." Stewart v. Erwin, 503 F.3d 488, 493 (6th Cir. 2007) citing Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F.

5

Supp. 2d 354, 359 (E.D. Mich. 2002)).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### IV. Discussion

#### A. Identification-Related Claims

**1.**

Petitioner raises two claims related to the pre-trial identification procedure. First, he claims that the pretrial identification procedure was unduly suggestive. Second, he claims that he was denied his right of confrontation when the witness whose identification was at issue was not called to testify at the Wade[1] hearing.

Due process requires suppression of eyewitness identification evidence "when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, — U.S. —, 132 S. Ct. 716, 718 (2012). A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. Neil v. Biggers, 409 U.S. 188, 197-98 (1972); Manson v. Brathwaite, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using Biggers' test). But the Supreme Court has held that

---

[1] See United States v. Wade, 388 U.S. 218 (1967). Petitioner filed a pretrial motion challenging the admissibility of the photo lineup identification. The trial court held an evidentiary hearing, commonly known as a Wade hearing, and concluded that the line up was not impermissibly suggestive.

suppression of the tainted identification is not necessarily the inevitable consequence. Brathwaite, 432 U.S. at 112-113. Instead, the Court has held that determining whether to suppress the identification should be done on a case-by-case basis. Id. at 116; see also Biggers, 409 U.S. at 201.

The danger is that an initial improper identification procedure will result in misidentification and will unduly influence later investigation. U.S. v. Wade, 388 U.S. 218, 229 (1967). "[T]he dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion is the greatest." Id. Therefore, "reliability is the linchpin in determining the admissibility of identification testimony. Brathwaite, 432 U.S. at 114. A court must undertake a two-step analysis to determine the validity of a pretrial identification. First, the court must determine whether the procedure was unduly suggestive. If the court finds that the procedure was unduly suggestive, the court must then "evaluate the totality of the circumstances to determine whether the identification was nevertheless reliable." Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994).

**2.**

The Michigan Court of Appeals (the last state court to issue a reasoned opinion regarding this claim) held that the identification procedure was not impermissibly suggestive stating, in relevant part:

> Generally, a photo array is not suggestive if it contains some photographs that are fairly representative of the defendant's physical features, and thus, are sufficient to reasonably test the identification. Kurylczyk, 443 Mich. at 304. If a witness has exposure to an impermissibly suggestive pretrial lineup or showup, that witness may not make an in-court identification of the defendant unless the prosecutor shows by clear and convincing evidence that the in-court identification has a sufficiently

> independent basis to purge the taint of the improper identification. ..."The need to establish an independent basis for an in-court identification arises [only] where the pretrial identification is tainted by improper procedure or is unduly suggestive." People v. Barclay, 208 Mich.App 670, 675; 528 N.W.2d 842 (1995).
>
> In this case, the trial court heard the testimony of Officer Miller that she prepared the third photo array, with defendant's picture in it, based on the facial characteristics of the suspect, which were described by Pitman, as well as the approximate age of the suspect. Officer Miller testified that the computer generated the photos based on this information, which included that the suspect was a black male with short braids and facial hair. The trial court observed the photo array, found it to be extremely fair, and concluded that Pitman's testimony was not necessary at the hearing and would be evaluated instead by the trier of fact.
>
> The trial court did not abuse its discretion in making this determination. The men chosen for the lineup look strikingly similar to defendant, and there is nothing about defendant's photo that makes it stand out more than the others. ...
>
> In summary, viewing the totality of the circumstances surrounding the photographic lineup, we conclude that the trial court did not clearly err in finding that the procedure followed by the officer in charge was not so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification.

Wallace, 2013 WL 4525881 at *2-3.

The Michigan Court of Appeals also held that, even if the pretrial procedure was impermissibly suggestive, an independent basis existed for Pitman's in-court identification. Id. at 3-4. The state court relied on Pitman's familiarity with Petitioner (she had seen him approximately 100 times over a period of six months), her close proximity to the shooter (approximately five feet), her description matched Petitioner's actual appearance, and she gave a viable explanation for waiting one month to provide police with a description of the shooter (she feared she would lose access to drugs if Petitioner were arrested because he was her supplier). Id. at *4.

**3.**

The Court concludes that the state court's determination that the identification procedure was not impermissibly suggestive was not contrary to or an unreasonable application of Supreme Court precedent. Moreover, even assuming that the identification procedure was impermissibly suggestive, Petitioner has failed to show the identification was not reliable. Ultimately, the reliability of the in-court identification was for the jury to decide. Perry, 132 S. Ct. at 729-30.

**4.**

Petitioner also argues that he was denied the right to confront Pitman at the pretrial Wade hearing. Although Respondent argues that this claim is procedurally defaulted, it is not necessary to address this issue. Procedural default is not a jurisdictional bar to review of the merits of an issue, Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). Because Petitioner is not entitled to relief on this claim, it is more efficient to proceed directly to the merits.

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" Pointer v. Texas, 380 U.S. 400, 405 (1965), quoting Turner v. State of

Louisiana, 379 U.S. 466, 472-73 (1965). The Michigan Court of Appeals held that Petitioner did not have a constitutional right to confront Pitman at the pretrial hearing. Wallace, 2013 WL 4525881 at *4.

Petitioner cites no case holding that the Sixth Amendment right of confrontation applies to a pretrial hearing. The Supreme Court has held that "[t]he right to confrontation is basically a trial right." Barber v. Page, 390 U.S. 719, 725 (1968). See also Nelson v. O'Neil, 402 U.S. 622, 626 (1971) ("[T]he 'confrontation' guaranteed by the Sixth and Fourteenth Amendments is confrontation at trial . . "). The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear *at trial* unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004) (emphasis supplied). See also Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987) ("The opinions of [the Supreme] Court show that the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination."). Courts in other circuits have consistently held that the Confrontation Clause does not apply to pre-trial hearings. See e.g., Ebert v. Gaetz, 610 F.3d 404, 414 (7th Cir. 2010) (holding that the Confrontation Clause does not extend to a pretrial suppression hearing); Finkel v. Walker, No. CV-10-536-PHX-FJM, 2011 WL 2746297, *11-12 (D. Ariz. May 9, 2011) ("[T]he Confrontation Clause does not confer a right to cross-examination during . . . a pretrial hearing."); Jones v. Woods, No. 07-cv-01326, 2009 WL 4906882, *3 (E.D. N.Y. Dec. 18, 2009) (same); United States ex rel. Thomas v. Gaetz, 633 F. Supp. 2d 645, 657 (N.D. Ill. 2009) (finding no Supreme Court precedent extending Confrontation Clause protections to pre-trial hearings).

Because no clearly established Supreme Court precedent supports Petitioner's argument that the Confrontation Clause applies to pretrial proceedings, the state court cannot be said to have unreasonably applied clearly established Federal law in denying this claim. Habeas relief is therefore not warranted.

### B.  Right to Present a Defense

### 1.

Petitioner's second claim concerns the trial court's exclusion of evidence that Carson was involved in an illegal drug business and that another individual had a motive to shoot her. He argues that the trial court's exclusion of this evidence violated his right to present a defense and that defense counsel's failure to lay a proper foundation for admission of this evidence was ineffective.

Petitioner sought to introduce testimony from the evidence technician who catalogued all of the personal property in Carson's vehicle. The technician would have testified that among the items recovered from Carson's vehicle were 15 driver's licences and identification cards. He also sought to introduce testimony of Jason Poyle. The Michigan Court of Appeals summarized the testimony offered by Poyle as follows:

> According to Poyle's affidavit, he was approached by an individual known as "D" shortly after the murder. "D" asked him to erase the hard drive on a laptop computer. When Poyle accessed the computer, he noticed that one of the user names was "Angela." Poyle also noted that "D" was between 5'7' and 5'9' tall and he had seen "D" at sometime in the past wear a "light blue hoody with a design." He further stated that Carson was known to illegally sell prescription medications. Defendant avers that this information is evidence that "D" was the person who shot Carson, and the fact that it was not admitted at trial violated his right to due process.

Wallace, 2013 WL 4525881 at *5.

The Michigan Court of Appeals held that the trial court properly excluded the

evidence technician's and Poyle's testimony.  The court of appeals held that, while the evidence technician's testimony may have cast light on Carson's illegal activities, "it did not sufficiently connect any other person to being her shooter."  Id.  With regard to Poyle's proffered testimony, the Michigan Court of Appeals held that it did not connect someone else to the shooting.  Instead, it rested on only speculation and conjecture.  Id.

**2.**

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law."  Washington v. Texas, 388 U.S. 14, 19 (1967).  It is one of the "minimum essentials of a fair trial."  Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  While the right to present a defense is a fundamental tenet of due process, it is "not unlimited, but rather is subject to reasonable restrictions."  United States v. Scheffer, 523 U.S. 303, 308 (1998).  Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process."  Id. (internal quotations omitted).  The exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused."  Id., citing Rock v. Arkansas, 483 U.S. 44, 58 (1987).  In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'"  Crane v. Kentucky, 476 U.S. 683, 690 (1986), quoting California v. Trombetta, 467 U.S. 479, 485 (1984).  But, "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983).

On federal habeas review, a court considering the exclusion of evidence must balance the state's interest in enforcing its evidentiary rules against the relevance and cumulative nature of the excluded evidence, and the degree to which the excluded evidence was "indispensable" to the defense. Crane, 476 U.S. at 691. State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" Scheffer, 523 U.S. at 308 (internal citations omitted).

**3.**

Here, the record shows that the state court excluded this evidence based upon a well-grounded requirement that evidence be relevant and based upon something more than mere speculation. The decision was not arbitrary or disproportionate to its purpose. The Michigan Court of Appeals' decision that Petitioner was not denied his right to present a defense was not contrary to or an unreasonable application of Supreme Court precedent.

**4.**

Petitioner also argues that his attorney was ineffective in failing to lay a proper foundation for testimony regarding third-party culpability. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. Id.

13

The Michigan Court of Appeals held that Petitioner could not satisfy Strickland's prejudice prong because even if counsel had more comprehensively explained to the trial court the rationale for admitting the evidence, the evidence remained inadmissible. The court of appeals' decision a reasonable application of Strickland. Where evidence is inadmissible under state evidentiary rules, counsel cannot be found ineffective for failing to gain its admission. Habeas relief is therefore denied on this claim.

### IV. Conclusion

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DENIED. Furthermore, reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

                                                S/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE

Dated: May 31, 2016
      Detroit, Michigan